UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COGNIZANT TECHNOLOGY<br>SOLUTIONS CORPORATION,<br><br>Plaintiff,<br><br>-against-<br><br>BOHRER, PLLC (f/k/a JEREMY I.<br>BOHRER, PLLC) and JEREMY I. BOHRER<br><br>Defendants. | Civil Action No.<br><br><br>**COMPLAINT AND DEMAND FOR<br>JURY TRIAL** |

Cognizant Technology Solutions Corporation ("Cognizant" or the "Company"), by and through its attorneys, alleges as follows for its Complaint against Defendants Bohrer, PLLC (f/k/a Jeremy I. Bohrer, PLLC) and Jeremy I. Bohrer (collectively, "Defendants"):

## NATURE OF THE ACTION

1.      Cognizant brings this action to recover millions of dollars fraudulently billed to it by Jeremy I. Bohrer and his law firm, Bohrer PLLC.

2.      The context for the Defendants' fraud is the investigation and subsequent indictment of Steven E. Schwartz, Cognizant's former Chief Legal Officer, by the United States Department of Justice for charged violations of the Foreign Corrupt Practices Act,[1] as well as various civil cases against Schwartz related to the same charged conduct.  Schwartz is currently a

---

[1]    *See* Department of Justice Press Release 19-127, "Former President and Former Chief Legal Officer of Publicly Traded Fortune 200 Technology Services Company Indicted in Connection with Alleged Multi-Million Dollar Foreign Bribery Scheme," (Feb. 15, 2019) *available at* https://www.justice.gov/opa/pr/former-president-and-former-chief-legal-officer-publicly-traded-fortune-200-technology.

defendant in four separate matters: one brought by the DOJ, *United States v. Coburn*, No. 19-cr-120 (D.N.J. Feb. 14, 2019); one brought by the Securities and Exchange Commission, *S.E.C. v. Coburn*, Civ. No. 19-cv-5820 (D.N.J. Feb. 15, 2019); and two brought by Cognizant's stockholders, *In re Cognizant Tech. Sols. Corp. Secs. Litig.*, No. 16-cv-6509 (D.N.J.), and *In re Cognizant Tech. Sols. Corp. Derivative Litig.*, No. 17-cv-1248 (D.N.J.) (collectively, "Proceedings").

3.      Schwartz retained Bohrer PLLC in July 2018.  Bohrer PLLC is one of five law firms that Schwartz has retained in connection with his defense in the Proceedings.

4.      Under its bylaws and an indemnification agreement, Cognizant is legally obligated to advance to Schwartz reasonable legal fees and expenses incurred by the firms representing him in the Proceedings.

5.      But the legal fees and expenses submitted by Bohrer PLLC have not been reasonable. Rather, upon information and belief, Bohrer and his firm have billed Cognizant for millions of dollars in fees and expenses for work that the firm either did not perform as invoiced or performed for a fraction of the cost at which it was billed.

6.      Upon information and belief, Bohrer has also sought to enrich himself by hiring vendors in which he has an ownership stake to work on the Schwartz matter and failing to disclose these obvious conflicts to Cognizant.

7.      Cognizant was made aware of Bohrer's conduct through an unsolicited, anonymous whistleblower email sent by an individual who claimed to have witnessed Bohrer's conduct firsthand.

8.      Cognizant then hired, through counsel, an investigative firm called Guidepost Solutions ("Guidepost") to determine the veracity of this whistleblower email.  During the course

of its investigation, Guidepost was approached by an individual who had worked with Bohrer on the Schwartz matter and made allegations about Bohrer's conduct similar to those outlined in the whistleblower email.

9.      The allegations made by this whistleblower and the individual who approached Guidepost are consistent with the facially implausible invoices Bohrer PLLC has submitted to Cognizant over the past three years.

10.     Bohrer PLLC's invoices have dwarfed those submitted by the four other firms that are defending Schwartz.   At times, Bohrer PLLC's monthly fees were more than *double* the amounts invoiced by the other four firms *combined*.   Presently, and as shown in the chart below, Bohrer PLLC's invoices alone are nearly double the amount billed by the two law firms representing Schwartz's co-defendant in the criminal proceeding, and are almost $4 million *higher* than the total amount billed by Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss") (another law firm currently representing Schwartz).

| Counsel for Steven Schwartz | | Counsel for Gordon Coburn | |
|---|---|---|---|
| Firm | Spend January 2019-April 2021 | Firm | Spend January 2019-April 2021 |
| Bohrer PLLC | $23,340,390 | Jones Day | $12,558,171 |
| Paul Weiss | $19,968,010 | Krieger Kim | $482,996 |
| **Total:** | **$43,308,400** | | **$13,041,167** |

11.     This is particularly egregious considering that Bohrer PLLC is a four-attorney law firm and Bohrer has no special expertise in white collar defense.

12.     Moreover, when Cognizant refused to pay Bohrer's invoices in 2019 and the matter was heard by the Delaware Chancery Court, it became clear that Bohrer had billed Cognizant for document review  conducted by contract attorneys on the Schwartz matter at a 600 percent markup

compared to the cost of those third-party contractors. Bohrer had concealed this egregious overbilling by fraudulently describing those third-party contractors as attorneys of Bohrer PLLC.

13.    Defendants' conduct is unethical, unconscionable, criminal, and has caused Cognizant significant harm. Even though Cognizant was contractually required to advance fees and costs for Schwartz's defense, Bohrer and Bohrer PLLC took advantage of that obligation in the extreme. Cognizant seeks to hold them responsible for their actions.

## PARTIES

14.    Plaintiff Cognizant is a corporation organized under the laws of the state of Delaware with its headquarters located at 500 Frank W. Burr Boulevard, Teaneck, NJ 07666.

15.    Defendant Bohrer, PLLC (f/k/a Jeremy I. Bohrer, PLLC) is a professional limited liability company organized under the laws of the state of New York, with its principal place of business at One Penn Plaza, Suite 2520, New York, NY 10119.

16.    Defendant Jeremy I. Bohrer is the managing partner of Bohrer, PLLC. Though formerly a resident of the State of New York, Bohrer recently relocated and is now, upon information and belief, is a resident of the State of Texas.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a), because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

18.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including the fact that Bohrer PLLC is a New York company that engaged in fraudulent billing in this District, and Defendants are subject to personal jurisdiction in this District.

19.     The Court has specific personal jurisdiction over Defendants because they transact business in New York and committed tortious acts in New York that are related to the claims at issue.

## FACTUAL BACKGROUND

**A.      Cognizant's Indemnification Obligations to Schwartz.**

20.     Schwartz is Cognizant's former Executive Vice President and Chief Legal and Corporate Affairs Officer.  He was hired by Cognizant in 2001 and resigned in 2016.

21.     As an officer of Cognizant, Schwartz was offered indemnification and advancement in certain circumstances under the Company's By-laws and under a June 4, 2013 Indemnification Agreement executed by Schwartz and the Company (the "Indemnification Agreement," which is attached as Ex. A).

22.     Article IX, Section 1 of Cognizant's By-laws states in relevant part that Cognizant shall indemnify

> any director or officer of the corporation who was or is made or is threatened to be made a party or is otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (a "Proceeding") by reason of the fact that he or she, . . . . is or was a director or officer of the corporation . . . against all liability and loss suffered and ***expenses (including attorneys' fees) reasonably incurred*** by such person in connection with any such Proceeding.[2]

23.     Article IX, Section 3 of the By-laws state that Cognizant must pay such expenses incurred "in defending any Proceeding in advance of its final disposition."

24.     In addition to Cognizant's obligation to advance indemnification expenses to its directors and officers, or, in Schwartz's case, its former directors and officers, Cognizant and

---

[2]  Unless otherwise noted, all emphases in quotations are supplied.

Schwartz are bound by the Indemnification Agreement, which sets out the Company's particular obligations to Schwartz as an Indemnitee.

25.     Section 3 of the Indemnification Agreement states that Cognizant shall indemnify Schwartz for "all Expenses, judgment, fines and amounts paid . . . ***actually and reasonably incurred*** by [Schwartz] . . . if Indemnitee acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Company . . . ."  And in a criminal proceeding, the Indemnification Agreement requires indemnification for such charges if the indemnitee "had no reasonable cause to believe that his conduct was unlawful."  ( *Id.* at § 3.)

26.     "Expenses" are only covered by the Indemnification Agreement if "***incurred in connection with prosecuting, defending, preparing to prosecute or defend, investigating, being or preparing to be a witness in, or otherwise participating in***" a lawsuit or enforcement proceeding.  (*Id.* at § 2(b)(vi)(g).)  While the Agreement provides that Expenses certified as reasonable by affidavit of an Indemnitee's counsel are presumptively reasonable for purposes of advancement," the Agreement does not cover personal expenses or expenses incurred by an Indemnitee's legal team that are unrelated or unnecessary to litigating the Proceedings.

27.     Under the Indemnification Agreement, Schwartz's right to advancement is subject to further conditions, including that for any demand for advancement to be presumed reasonable, such expenses must be "certified by affidavit of Indemnitee's counsel as being reasonable." (*Id.* at § 2(b)(vi)(g).)

**B.     Schwartz invokes his right to reasonable advancement under the Indemnification Agreement, and Cognizant honors his request.**

28.     In the spring of 2016, Cognizant began an internal investigation into suspected violations of the FCPA concerning certain payments related to company-owned facilities in India.

As the Company's Chief Legal and Corporate Affairs Officer, Schwartz initially directed that investigation.

29.     By August of 2016, the investigation began to look into the conduct of certain of Cognizant's officers including Schwartz.  As a result, the Company told Schwartz that he could no longer participate in the investigation.  Two days later, Schwartz retained the first of five law firms that would represent him, Hoguet Newman Regal & Kenney, LLP ("Hoguet").

30.     In September 2016, as the investigation progressed and Cognizant learned more about events in India, the Company voluntarily notified the DOJ and SEC of its investigation.

31.     Schwartz resigned from Cognizant in November 2016. In October 2016, he dismissed Hoguet and hired his second law firm, Steptoe & Johnson LLP ("Steptoe"), to represent him in the FCPA investigation.

32.     For the next year and a half, in recognition of Schwartz's right to advancement of reasonable expenses, Cognizant paid approximately $839,000 for fees and expenses incurred in connection with Schwartz's defense in the FCPA investigation.

33.     In July 2018, Schwartz informed Cognizant that he had retained the services of Bohrer PLLC and Paul Weiss, and that he was dismissing Steptoe.  Schwartz then sought advancement of the fees incurred by Bohrer PLLC and Paul Weiss from Cognizant.

34.     At the outset, the Company was reluctant to advance Schwartz fees and expenses incurred by Bohrer PLLC for two reasons.  First, Bohrer had not provided the affidavit required by the Indemnification Agreement with each invoice certifying that his firm's fees were reasonable.  Second, Bohrer PLLC's invoices appeared unreasonable in light of the fact that Paul Weiss was the far more experienced firm in these types of cases and could provide an excellent defense for Schwartz without any assistance from Bohrer PLLC.  Indeed, when Schwartz initially

sought advancement for Bohrer PLLC's fees, there were at least 22 lawyers with FCPA experience at Paul Weiss, but there was none at Bohrer PLLC.[3]

35.     Nonetheless, after Bohrer eventually provided the required certifications that his invoices were reasonable (the "Certifications"), Cognizant agreed to advance Schwartz's fees and expenses to Bohrer PLLC under the Indemnification Agreement.  Bohrer continued to provide Certifications with each invoice submitted to Cognizant for advancement.

36.     In February 2019, the DOJ entered a 12-count indictment against Schwartz in the United States District Court for the District of New Jersey, alleging, in part, that he had "falsified and caused to be falsified books, records, and accounts."  *United States v. Coburn et al.*, No. 19-cr-120 (D.N.J. Feb. 14, 2019) (Dkt. 1, Indictment, at 21).  The next day, the SEC filed a civil lawsuit in the same court arising out of the same facts.  *S.E.C. v. Coburn*, No. 19-cv-5820 (D.N.J. Feb. 15, 2019) (Dkt. No. 1, Compl.).  Schwartz then hired his fifth firm, Gibbons P.C. ("Gibbons"), to serve as New Jersey counsel.

37.     Schwartz was later named as a defendant in two pending civil proceedings brought by Cognizant's stockholders: first, in February 2019, stockholder-plaintiffs added Schwartz as a defendant to a putative securities fraud class action accusing him of making misleading representations and omissions regarding the Company's alleged violations of the FCPA.  *See In re Cognizant Tech. Sols. Corp. Secs. Litig.*, No. 16-cv-6509 (D.N.J.). Then, in August 2020, Schwartz was added as a defendant in a derivative action alleging that Schwartz and others had breached their fiduciary duties to Cognizant by engaging in a pattern of misconduct that had substantially

---

[3]  It was not until after Schwartz retained Bohrer PLLC that the firm hired an attorney with criminal defense experience in September 2018.  He only worked at Bohrer PLLC for only one year.  Bohrer has recently made other hires, but they were not employed by Bohrer PLLC when the majority of its invoices were submitted to Cognizant.

harmed the Company.  *See In re Cognizant Tech. Sols. Corp. Derivative Litig.*, No. 17-cv-1248 (D.N.J.).  More recently, Schwartz also has been named as a defendant in an additional putative shareholder derivative action alleging that Schwartz and others breached their fiduciary duties to Cognizant by engaging in a pattern of misconduct that substantially harmed the Company.  *See Palempalli v. Patsalos-Fox, et al.*, No. 2:21-cv-12025 (D.N.J.).

**C.    The Whistleblower Email and Subsequent Investigation.**

38.    From July 2018 through November 2019, Bohrer PLLC billed Cognizant more than $10 million, almost twice the combined total that had been billed by the four other firms that had represented or were then representing Schwartz.  As a result, Cognizant informed Bohrer in November 2019 that it would no longer advance fees and costs to Bohrer PLLC.

39.    Schwartz then filed an action for advancement in the Delaware Chancery Court (the "Advancement Proceeding") claiming that he was "entitled to advancement of his legal fees and expenses reasonably incurred," including those billed by Bohrer PLLC.

40.    In July 2020, during the course of the Advancement Proceeding, counsel for Cognizant in that matter received an unsolicited, anonymous email from a whistleblower stating:

> I am a legal professional who has worked at Bohrer PLLC at some point in time over the past 18 months. What I witnessed with regard to the Schwartz case is completely improper, if not illegal. I am providing you this information so that justice is done to the professionals that are conducting fraud.

> Mike Gramins is the COO of the firm and partner of Jeremy Bohrer (Managing Partner). Gramins was previously convicted of financial fraud in federal court. The monthly bill for legal services rendered is handled by Gramins. Gramins inflates the bill and then make changes upon changes to inflate the final bill sent to the client.

> Associates are tasked monthly to manufacture and create billing for the Managing Partner Jeremy Bohrer.  In the office at One Penn Plaza, it's openly discussed among employees that "this is crazy."  Bohrer does not work on the case, but bills hundreds of hours at an exorbitant bill rate.

It was also discovered that Bohrer pays all of Steve Schwartz personal expenses and has done so since the beginning of the case.  Checks in the amount of $3,000.00 and $10,000.00 with no supporting documentation have been observed almost monthly.

Vendor bills are submitted to BPLLC, full payment is collected by BPLLC and then Bohrer attempts to strong arm the vendors to take less and his firm keeps the difference for himself.  That is illegal!

Bohrer has taken trips to India and other countries, which are used to run up the bills. If you actually look at this, you will see that no "in person meetings" took place during these trips to India, only phone calls were placed.  They fly there, stay at hotels and hold conference calls and then fly home just to create an absorbent, fictitious bill.

Inflation of hours and billing by extravagant amounts is the norm at BPLLC.  The interesting part is that they only have one client, Steve Schwartz.

I feel that I have done my part by sending you this email.  If you dig a bit, you will discover all the billing anomalies.

41.     Understandably disturbed by these allegations, Cognizant, through counsel, engaged Guidepost to determine whether the allegations made in the whistleblower email were accurate.

42.     Guidepost then sought to interview former employees of Bohrer PLLC in an effort to verify the details of the whistleblower email.  At the direction of both Cognizant and counsel, Guidepost was careful to admonish every individual it approached that it was not seeking any privileged or confidential information regarding Schwartz's defense, but was interested in only non-privileged information regarding potentially fraudulent billing practices by Bohrer and his firm in connection with invoices paid by Cognizant.

43.     The majority of individuals approached by Guidepost refused to speak with them, and those that did said they were not in a position to confirm or deny the allegations in the whistleblower email.

44.     During the course of Guidepost's investigation, in October 2020, an individual named Stephen Ward approached Guidepost and said he had information about Defendants' fraud. Ward stated that he was a business associate of Bohrer's who would not be further associating with Bohrer because of his concerns about Bohrer's misconduct.  Guidepost admonished Ward that it was not interested in receiving any privileged or confidential information, and Ward never gave Guidepost or Cognizant any documents or privileged or confidential information.

45.     Ward then told Guidepost that Bohrer was committing egregious fraud in connection with the bills being submitted by Bohrer PLLC to Cognizant, including by (1) regularly marking up the time of professionals working on the case by hundreds of percent; (2) using unqualified personnel to perform tasks requiring special expertise that they did not possess and then billing their time to Cognizant as if they did; and (3) receiving invoices from vendors working on the matter at a negotiated discount, but charging Cognizant for the full, undiscounted amount.

46.     Ward said Bohrer had also explicitly directed employees of the firm in writing to "bill high" when it came to the Schwartz matter.

47.     The allegations made by Ward and in the whistleblower email are consistent with the invoices Bohrer PLLC has submitted to Cognizant.  From July 2018 to present, those invoices exceed $23 million and dwarf the amounts invoiced by the other firms representing Schwartz and Schwartz's co-defendant in the criminal case.  Specifically, Bohrer PLLC has billed nearly double the total amount invoiced by the two law firms representing Schwartz's co-defendant.  And Bohrer PLLC has billed approximately $4 million more than Paul Weiss, notwithstanding the fact that Paul Weiss is a highly skilled and reputable law firm with significant expertise representing white collar defendants, whereas Bohrer PLLC has only a handful of attorneys and had no special recognition or expertise in white-collar defense when Schwartz retained the firm.

48.     Ward stated that Bohrer PLLC billed Schwartz for its attorneys performing "the same task over and over" and encouraged "churning," the practice of multiple attorneys performing duplicative tasks to increase the firm's billing.  For example, he stated that multiple employees of Bohrer PLLC reviewed investigative reports without the need to do so and without generating substantive work product.  This allegation is corroborated by Bohrer PLLC's invoices, which reflect that between December 2018 and May 2019, as many as six "Professionals" billed time for reviewing investigative reports.  In practical terms, this means that every attorney employed by Bohrer PLLC at the time, and the paralegal, billed Schwartz for reviewing investigative reports—often several times each month and on more than 50 occasions in total, for varying lengths of time, at hourly rates between $335 for the paralegal and $1,450 for Bohrer.

49.     Ward further stated that Bohrer PLLC billed Schwartz for non-lawyers performing legal work at the hourly rate of $525.  Bohrer PLLC's invoices confirm the accuracy of this assertion.  Billing entries between April 2019 and August 2020 revealed two non-attorney employees working on the Schwartz matter at the billing rate of $525 per hour; one billed approximately $85,000 in fees between April and July 2019, much of it for tasks including supervision of contract attorneys conducting document review, review and analysis of memoranda, and telephone conferences with the Bohrer PLLC team and co-counsel. Another individual billed to Schwartz's matter nearly $50,000 in fees between April and August 2020, including for analysis and preparation of memoranda, providing case management support, and project related research. These individuals were not qualified or licensed to perform such tasks.

50.     Moreover, although Bohrer PLLC actually incurred $383,900 in costs associated with hiring contract attorneys to review documents in the FCPA Action, it was revealed in the Advancement Proceedings that the invoices sent to Cognizant for those same services requested

payments of nearly $2.9 million over the course of two years, a 600 percent increase over the actual cost.

51.     In some instances, the Bohrer PLLC invoices misrepresented contract attorneys as Bohrer PLLC "Professionals," charging between $360 and $875 per hour for their time.   For example, on a May 20, 2019 Bohrer PLLC invoice seeking payment for $1,133,678.57 for services rendered from April 1, 2019, through April 30, 2019, Schwartz was charged for the services of no fewer than twelve contract attorneys listed as Bohrer PLLC "Professionals" – not one of whom was employed by Bohrer PLLC during the period covered by the invoice.  (*See* Ex. B, May 20, 2019 Bohrer PLLC Invoice.)

52.     While the Bohrer PLLC invoices separately listed "Costs and Disbursements," Bohrer did not include the costs for these contract attorneys within that category.   Instead, Defendants passed those costs on to Cognizant at massively inflated rates, generating significant profit for Bohrer PLLC.

53.     In contrast, the invoices from Paul Weiss, a firm that deployed dozens of professionally licensed attorneys in Schwartz's defense, yet billed him millions of dollars less than Bohrer PLLC over the same time period, carefully distinguished between "partners," "counsel," "associates," "staff attorneys," "paralegals," and "non-legal support."

54.     Bohrer's accounting practices explain why the rates charged for Bohrer PLLC's so-called "Professionals" were inconsistent month-to-month.  For example, on a September 25, 2019 Bohrer PLLC invoice, the firm billed out two contract attorneys – Ron Busloff and Samuel Luciano – as "Professionals" at the rate of $360 per hour.  (Ex. C, Sept. 25, 2019 Bohrer PLLC Invoice.) On the very next invoice to Schwartz, dated October 28, 2019, Busloff's and Luciano's rates were inexplicably increased to $475 per hour – again, for the work of contract attorneys who were not

Bohrer PLLC employees, and for whose services Schwartz was supposed to be paying at cost. (Ex. D, Oct. 28, 2019 Bohrer PLLC Invoice.)  The cost of Busloff's and Luciano's services to Schwartz was actually $52.50 per hour during this period.

**D.     The Advancement Proceeding and Defendants' Fraud on the Court**

55.     As noted above, after being forced month after month to pay exorbitant sums to Bohrer PLLC, Cognizant ultimately concluded that Bohrer PLLC's fees were unreasonable.

56.     In November 2019, Company counsel informed Bohrer that Cognizant would no longer pay Bohrer PLLC's invoices.

57.     On December 16, 2019, Schwartz filed the Advancement Proceeding in the Delaware Chancery Court seeking a declaratory judgment that he was entitled to advancement for certain Bohrer PLLC invoices totaling $2.89 million that Cognizant was refusing to pay (the "Disputed Invoices"). On January 22, 2020, Schwartz filed a motion for summary judgment seeking an order declaring Bohrer PLLC's fees reasonable as a matter of law.

58.     While Bohrer did not enter an appearance in the litigation, he played a direct, active role in the case.  Among other things, Bohrer personally appeared at hearings, participated in meet-and-confer sessions between the parties, and eventually took the lead on settlement negotiations. In addition, on information and belief, Bohrer PLLC and Bohrer were intimately involved in the filings made on Schwartz's behalf, including drafting significant portions of the filings.

59.     Throughout the course of the Advancement Proceeding, Bohrer and Bohrer PLLC were not candid with the court about their conduct.  Rather, they caused Schwartz and his counsel to repeatedly and falsely claim (i) that the Bohrer PLLC's invoices were "detailed" and allowed Cognizant "to see what's going on" with regard to the work the firm was doing on Schwartz's behalf; and (ii) that the purported fees requested by Bohrer were "demonstratively reasonable"

(*see* Ex. E,  Adv. Proc. DI. 35 at 30) and actually "incurred" (*see* Ex. F,  Adv. Proc. DI. 1 at ¶ 3). These statements were not true.

60.     Chancellor Bouchard ruled that the Advancement Proceeding was not the appropriate action to challenge the validity of these representations or the propriety of the Bohrer PLLC invoices.  Rather, the "primary issue" raised by the Advancement Proceeding was "whether the Bohrer firm's outstanding invoices must be paid without any further review based on the conclusive presumption in the indemnification agreement" that all expenses accompanied by an affidavit of reasonableness were, in fact, reasonable.  (Ex. G, Apr. 7, 2020 Hr'g Tr. at 12:15-19.)

61.     In light of that limited scope, "the only specific challenge Cognizant . . . made to the reasonableness of the Bohrer firm's fee request," and therefore the only challenge that Chancellor Bouchard considered when Schwartz moved for summary judgment, was the "contract attorney issue."  (*Id.* at 25:11-14.)

62.     The court granted Schwartz's motion for summary judgment in part, ordering Cognizant to advance Schwartz $2,690,216.05 for fees, expenses, and interest owed to Bohrer PLLC.  (*See* Ex. H,  Adv. Proc. D.I. 53 at ¶ 1(a).)  The court also denied the motion in part, finding that Schwartz's right to advancement of $245,195 in contract attorneys' fees included in the Disputed Invoices was a triable issue.  (*Id.* at ¶ 1(b).)

63.     In the face of a trial regarding the reasonableness of his fees, Bohrer vigorously pushed to settle the Advancement Proceeding.  The parties settled the dispute regarding contract attorneys' fees, without waiver of Cognizant's rights to pursue any and all other claims related to Defendants' bills.

64.     To the present day, Bohrer PLLC continues to bill Cognizant exorbitant amounts that are well beyond the value of any services actually provided and well beyond those of far larger

firms with far more relevant expertise playing a far greater role in Schwartz's defense. To date, Cognizant has advanced over $23 million in fees and expenses to Bohrer PLLC.

## FIRST CAUSE OF ACTION
### Fraud
### (Against All Defendants)

65.     Cognizant repeats and realleges each and every allegation above as though fully set forth herein.

66.     Bohrer and Bohrer PLLC knowingly made material misrepresentations to Cognizant and the Delaware Court of Chancery. Bohrer PLLC's invoices identify particular tasks performed and services rendered that purportedly advanced Schwartz's defense. But these statements regarding Defendants' work and costs were false for all of the reasons alleged above, including that the invoices represent hundreds of hours or more of work at attorney rates that no Bohrer attorney ever performed, Bohrer PLLC listed non-attorneys as "Professionals" and charged manifestly unreasonable and ever-changing amounts for their services, and Bohrer PLLC billed for costs that were improperly inflated or unrelated to Schwartz's defense.

67.     Each Defendant made, authorized, or caused these false representations.

68.     Each of the Defendants knew their representations and omissions were false and/or misleading when they were made. Each made the misleading statements with an intent to defraud Cognizant.

69.     Defendants had reason to expect that Cognizant would rely on the representations in the invoices, and each intended their misleading statements to induce Cognizant to pay the amounts stated in the invoices to Bohrer PLLC and Bohrer.

70.     Cognizant justifiably relied on Defendants' false representations and misleading omissions.

71.     Had Cognizant known the true facts regarding Defendants' actual work performed for Schwartz, it would not have paid the invoices from July 2018 through the present.

72.     As a result of the foregoing, Cognizant has suffered damages exceeding $20 million.

## SECOND CAUSE OF ACTION
### Civil Conspiracy
### (Against All Defendants)

73.     Cognizant repeats and realleges each and every allegation above as though fully set forth herein.

74.     Around April 2016, Defendants formed an agreement to defraud Cognizant for the amounts stated in Bohrer PLLC's invoices.

75.     In furtherance of the conspiracy, Bohrer and Bohrer PLLC fabricated the fraudulent invoices to create a record justifying their requests for payment from Cognizant, caused those invoices to be sent to Cognizant, and mispresented facts about the invoices and Defendants' work for Schwartz to the Delaware Chancery Court.  The invoices were fraudulent for the reasons alleged above.

76.     Defendants engaged in the conspiracy to enrich themselves by fraudulently overbilling Cognizant.

77.     As a direct, proximate, and foreseeable result of the Defendants' actions, Cognizant has suffered damages of at least $20 million.

## THIRD CAUSE OF ACTION
### In the Alternative, for Unjust Enrichment
### (Against All Defendants)

78.     Cognizant repeats and realleges each and every allegation above as though fully set forth herein.

79.     By their wrongful acts and omissions, Bohrer and Bohrer PLLC were unjustly enriched at the expense of and to the detriment of Cognizant.  Defendants were unjustly enriched as a result of the compensation, income, and other benefits they received from the advancement payments made by Cognizant, which were wrongfully induced for the reasons alleged above.

80.     Cognizant was financially harmed as a result of being induced to pay fraudulent invoices issued by Bohrer PLLC.

81.     There is a rational relationship between the practice of Bohrer PLLC issuing false invoices and Cognizant's financial harm, since those invoices were sent to and paid by Cognizant.

82.     Cognizant seeks restitution from Defendants and disgorgement of all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

83.     Cognizant has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Cognizant respectfully requests an order entering judgment in favor of Cognizant against Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including at a minimum:

A.      An order awarding Cognizant its monetary losses, reflecting all payments made to Bohrer PLLC, of at least $20 million;

B.      An award of punitive damages;

C.      Pre-judgment and post-judgment interest on all amounts due at the maximum legal rate;

D.      An order awarding costs and expenses, as well as reasonable attorneys' fees, incurred by Cognizant in this action to the fullest extent permitted by law; and

E.      Such other relief, including equitable or injunctive relief, as is just and proper.

## __JURY TRIAL DEMANDED__

Plaintiff requests a jury trial.

Dated: June 16, 2021

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: _____

William A. Burck
Ben A. O'Neil
1300 I Street, NW
Suite 900
Washington, DC 20005
Tel: (202) 538-8000
williamburck@quinnemanuel.com
benoneil@quinnemanuel.com

Luke Nikas
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
lukenikas@quinnemanuel.com

*Attorneys for Plaintiff Cognizant Technology
Solutions Corporation*