UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION,<br><br>                  Plaintiff,<br><br>v.<br><br>BOHRER PLLC and JEREMY I. BOHRER,<br><br>                  Defendants. | No. 21-CV-5340 (RA)(KHP)<br><br>MEMORANDUM<br>OPINION & ORDER |

RONNIE ABRAMS, United States District Judge:

      Plaintiff Cognizant Technology Solutions Corporation ("Cognizant") filed this action against law firm Bohrer PLLC (the "Bohrer Firm") and its managing partner Jeremy I. Bohrer (individually, "Bohrer," and collectively with the Bohrer Firm, "Defendants"), for allegedly fraudulent billing practices in connection with their representation of Cognizant's former Chief Legal Officer, Steven Schwartz, in various criminal and civil proceedings. Plaintiff brings claims for fraud, civil conspiracy, and unjust enrichment and seeks to recover over $20 million in fees and expenses it has already paid to the Bohrer Firm. Now before the Court is Defendants' motion to dismiss the claims against them or, alternatively, to stay the action.

      The threshold issue on this motion is whether Cognizant's claims are governed by a forum selection clause contained in an agreement between it and Schwartz, pursuant to which Cognizant agreed to indemnify Schwartz against any litigation expenses, including attorneys' fees, incurred by reason of his employment. The agreement specifies that all disputes "arising out of or in connection with" the contract must be brought in the Delaware Court of Chancery. Because the Court is persuaded by Defendants' arguments that both the parties and the claims in

this action fall within the scope of the forum selection clause, it grants their motion to dismiss on this basis and does not reach the sufficiency of Cognizant's complaint. The Delaware Court of Chancery is the proper forum for Cognizant's fraud and related claims.

## BACKGROUND

### I. The Parties

Plaintiff Cognizant, a Delaware technology services corporation, formerly employed Steven Schwartz as its Executive Vice President and Chief Legal Officer. Compl. ¶ 20. Schwartz was hired by Cognizant in 2001 and resigned in 2016. *Id.* In 2016, Cognizant began investigating Schwartz for his involvement in suspected Foreign Corrupt Practices Act ("FCPA") violations stemming from the company's operations in India. *Id.* ¶¶ 28-29. In September of 2016, Cognizant voluntarily notified the DOJ and SEC of its investigation. *Id.* ¶ 30. Schwartz was subsequently charged by the DOJ with violating the FCPA and is currently a defendant in four separate proceedings in the District of New Jersey—the criminal case brought by the DOJ and three civil cases brought by the SEC and Cognizant's shareholders (the "Proceedings"). *Id.* ¶ 2. In July 2018, Schwartz retained the Bohrer Firm to represent him in the Proceedings, alongside Paul, Weiss, Rifkind, Wharton & Garrison LLP and Gibbons P.C. *Id.* ¶¶ 3, 10, 36.

### II. The Indemnification Arrangement

Pursuant to its bylaws and an agreement for indemnification, Cognizant is legally obligated to advance to Schwartz reasonable legal fees and expenses incurred by the law firms defending him in the Proceedings. *Id.* ¶ 4. Specifically, Cognizant's bylaws state that it will indemnify any officer of the corporation "against all liability and loss suffered and expenses (including attorneys' fees) reasonably incurred" in actions brought against him by reason of his employment at Cognizant, and that it will pay such expenses "in advance of [the] final

2

disposition." *Id.* ¶¶ 22-23. In addition, a June 4, 2013 agreement (the "Indemnification Agreement") between Cognizant and Schwartz states that for the purposes of advancement, legal expenses that are certified as reasonable by affidavit of the indemnitee's counsel "shall be presumed conclusively to be reasonable." Indemnification Agreement § 2(b)(vi)(g). Both the bylaws and the Indemnification Agreement require the indemnitee to pay back the advanced fees if he is later found to be ineligible for indemnification through an indemnification proceeding, which is not to take place until after "the final disposition of the [underlying] Proceeding." *See id.* § 14(e); Bylaws Art. IX § 4.

The Indemnification Agreement notes at the outset that it has become increasingly difficult to "attract and retain qualified individuals" to serve as corporate officers and directors due to the risk of "being increasingly subjected to expensive and time-consuming litigation." Indemnification Agreement at 1. The overarching purpose of the agreement was thus to "indemnify, and to advance expenses on behalf of, such persons to the fullest extent permitted by applicable law so that they will serve . . . the Company free from undue concern that they will not be so indemnified." *Id.* It also provides that "any action or proceeding arising out of or in connection with this Agreement shall be brought only in the Delaware Court [of Chancery]." *Id.* § 23.

### III. The Advancement Proceeding

In November of 2019, having been billed more than $10 million by the Bohrer Firm for Schwartz's defense in the Proceedings, Cognizant determined that the firm's fees were unreasonable and informed Defendants that it would no longer pay their invoices. Compl. ¶¶ 38, 55-56. This prompted Schwartz to file an action in the Delaware Court of Chancery seeking to compel Cognizant to continue advancing the Bohrer Firm's fees to him (the "Advancement

Proceeding"). *Id.* ¶ 39. Cognizant answered, asserting affirmative defenses for unclean hands and breach of the implied covenant of good faith and fair dealing. *See* Apr. 7, 2020 Hearing Tr. at 9. During the course of this proceeding, Cognizant received a whistleblower email from an anonymous former employee at the Bohrer Firm, alerting the company that Defendants were engaging in fraudulent billing practices. Compl. ¶ 40. The whistleblower alleged, among other things, that Jeremy Bohrer billed "hundreds of hours at an exorbitant bill rate" to Cognizant even though he did not actually work on Schwartz's case, that Cognizant was being invoiced for Schwartz's personal expenses, and that the firm was receiving services from outside vendors at a negotiated discount, but charging Cognizant for the undiscounted amount and pocketing the difference. *Id.* In October of 2020, a former business associate of Bohrer further informed Cognizant that Defendants were engaging in billing fraud by marking up billable hours by hundreds of percent, using non-lawyers to perform legal work and billing for them at lawyer rates, and requiring attorneys to engage in duplicative tasks to drive up the bills. *Id.* ¶¶ 44-49.

On January 22, 2020, Schwartz moved for summary judgment in the Delaware Advancement Proceeding, seeking an order declaring the Bohrer Firm's fees reasonable as a matter of law for advancement purposes. *Id.* ¶ 57. On April 7, 2020, Chancellor Bouchard granted the motion in part and denied in part. Specifically, he ruled that the propriety of the Bohrer Firm's invoices could not be challenged during the Advancement Proceeding, *id.* ¶ 60, and held that "[w]ith respect to the Bohrer firm's invoices for work performed in the criminal and SEC actions . . . the conclusive presumption [of reasonableness] shall apply to all charges," Apr. 7, 2020 Hearing Tr. at 28-29. He also found, however, that notwithstanding the application of the conclusive presumption, Cognizant had presented a narrow triable issue as to Schwartz's right to the advancement of fees for the Bohrer Firm's contract attorneys, which were billed to

4

Cognizant at a markup of 600 percent. *Id.* at 25 ("In my opinion, the contract attorney issue, which is the only specific challenge Cognizant has made to the reasonableness of the Bohrer firm's fee requests, is a factually disputed issue that can be considered by the Court."). The parties settled the dispute over the contract attorneys' fees prior to trial. Compl. ¶ 63. Pursuant to Chancellor Bouchard's order, Cognizant resumed advancing the Bohrer Firm's legal fees to Schwartz and has paid over $23 million to date. *Id.* ¶ 64.

## IV. The Instant Action

On June 16, 2021, Cognizant commenced this action against the Bohrer Firm and Jeremy Bohrer—but not Schwartz—to "recover [the] millions of dollars fraudulently billed to it" by them. *Id.* ¶ 1. On July 21, 2021, Schwartz responded by filing a complaint for injunctive relief in the Delaware Court of Chancery, seeking to hold Cognizant in civil contempt and to enjoin it from prosecuting this case. Del. Compl. ¶¶ 3, 61. Alongside his complaint in the Delaware action, Schwartz also filed a motion for expedited proceedings, which Vice Chancellor Will[1] denied on August 23, 2021 after finding that Schwartz had made an insufficient showing of "a threat of irreparable injury." Aug. 23, 2021 Hearing Tr. at 33. In light of the pending Delaware action, Magistrate Judge Parker ruled in the instant case that a deferral of discovery would be appropriate until a decision is issued by the Chancery Court. Nov. 3, 2021 Hearing Tr. at 26. On March 25, 2022, Vice Chancellor Will denied Schwartz's motion for an anti-suit injunction and declined to hold Cognizant in contempt.

---

[1] Vice Chancellor Will was assigned to the action after Chancellor Bouchard retired from the bench in 2021.

Defendants now move to dismiss this action on the basis of *forum non conveniens*, the Indemnification Agreement's prohibition on interim determinations, principles of *res judicata* and collateral estoppel, and/or the *Colorado River* abstention doctrine. In the alternative, they move to stay the action until the conclusion of the indemnification phase of the parallel Delaware proceeding.

## DISCUSSION

The Court first considers Defendants' argument that the action should be dismissed under the doctrine of *forum non conveniens*. Because it finds this argument persuasive, it does not reach the other potential grounds for dismissal offered by Defendants.

**I.    Forum Non Conveniens**

Defendants contend that this Court is an inappropriate forum for the parties' dispute because the Indemnification Agreement between Cognizant and Schwartz contains a forum selection clause that provides that "any action or proceeding arising out of or in connection with this Agreement shall be brought only in the Delaware Court [of Chancery], and not in any other state or federal court in the United States of America or any court in any other country." Indemnification Agreement § 23. Thus, they argue, the complaint should be dismissed on the basis of *forum non conveniens*.[2]

Courts employ a four-part analysis to determine whether a case should be dismissed based on a forum selection clause. First, a court must ask: "(1) whether the clause was

---

[2] The proper procedural mechanism for enforcing a forum selection clause that points to a nonfederal forum is a motion to dismiss for *forum non conveniens*. *See Atlantic Marine Constr. Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 60 (2013). In deciding such a motion, courts may rely on the pleadings and affidavits submitted in connection with the motion, but cannot resolve any disputed material fact in the movant's favor unless an evidentiary hearing is held. *Martinez v. Bloomberg LP*, 740 F.3d 211, 216-17 (2d Cir. 2014).

reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., whether the parties are required to bring any dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause." *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014); *see also Starkey v. G Adventures, Inc.*, 796 F.3d 193, 196 (2d Cir. 2015) (same).[3] "If the forum clause was communicated to the resisting party, has mandatory force, and covers the claims and parties involved in the dispute, it is presumptively enforceable." *Martinez*, 740 F.3d at 217 (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)). The resisting party can overcome the presumption "only by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* Courts give "substantial deference" to the forum selected by the parties, particularly where this choice "was made in an arm's-length negotiation by experienced and sophisticated businessmen." *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)). And the Supreme Court has made clear that "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atlantic Marine*, 571 U.S. at 63.

      Cognizant does not dispute that the forum selection clause was reasonably communicated to it and that it is mandatory in effect. Nor could it, as it is a signatory to the Indemnification Agreement and the language of the clause—"shall be brought only in the Delaware Court"—clearly carries mandatory force. *See Phillips*, 494 F.3d at 387. Cognizant asserts, however, that

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

the parties and claims involved in this action are not subject to the forum selection clause. Specifically, it contends that Defendants cannot enforce the clause because they are not parties to the Indemnification Agreement, and that even if they could, the clause does not cover the claims asserted in this action. Neither argument is availing.

### A. The Parties Are Subject to the Forum Selection Clause

"The fact [that] a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Grp., LLC v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009). The Second Circuit has disavowed "[a] literal approach to interpreting forum selection clauses" and instead recognizes that "a range of transaction participants, parties and nonparties, should benefit from and be subject to forum selection clauses." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013). It held in *Magi* that "a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory." *Id.* at 723. In such instances, "the relationship between the non-signatory and that (latter) signatory must be sufficiently close that the non-signatory's enforcement of the forum selection clause is 'foreseeable' to the signatory against whom the non-signatory wishes to enforce the forum selection clause." *Id.* This rule "prevent[s] parties to contracts from using evasive, formalistic means lacking economic substance to escape contractual obligations," *id.* at 722, and preserves the "legitimate expectations of the parties, manifested in their freely negotiated agreement," *id.* at 723 (quoting *M/S Bremen*, 407 U.S. at 12).

Courts in this Circuit have found a non-signatory to be "'closely related' to a dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the

8

signatory party's interests or conduct." *Cuno, Inc. v. Hayward Indus. Prods., Inc.*, No. 03-CV-3076 (MBM), 2005 WL 1123877, at *6 (S.D.N.Y. May 10, 2005).  The "closely related" test is also satisfied in situations where the non-signatory is alleged to have acted in concert with the signatory, *see Horvath v. Banco Comercial Portugues, S.A.*, 461 F. App'x 61, 64 (2d Cir. 2012), or where the complaint treats them as a single unit, *see F5 Cap. v. RBS Sec. Inc.*, No. 3:14-CV-1469 (VLB), 2015 WL 5797019, at *5 (D. Conn. Sept. 30, 2015), *aff'd*, 692 F. App'x 66 (2d Cir. 2017) (citing *Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999)).[4]  Here, the relationship between Defendants and Schwartz is sufficiently close for Defendants to enforce the forum selection clause contained in the Indemnification Agreement between Schwartz and Cognizant.

As Cognizant's complaint makes clear, the Indemnification Agreement obligates it to "advance to Schwartz reasonable legal fees and expenses incurred by the firms representing him in the Proceedings."  Compl. ¶ 4.  The Bohrer Firm is one of the law firms presently representing Schwartz in the Proceedings.  Its interest in having its bills paid by Cognizant is thus, at the very least, "directly related to, if not predicated upon" Schwartz's interest in being advanced those very same fees.  Defendants rightly note that their interest in continued payment can be viewed as a mere extension of Schwartz's advancement rights because while Cognizant "may pay the Bohrer Firm directly out of convenience," Defs.' Br. at 14, it is in fact paying the Bohrer Firm's bills on behalf of Schwartz.  This is particularly true where Defendants assert, and Cognizant does not appear to dispute, that Schwartz has never accused his counsel of fraudulent billing.[5]

---

[4] Although *Smith/Enron* was about an arbitration clause rather than a forum selection clause, the Second Circuit has noted that "an arbitration clause is merely a specialized type of forum selection clause." *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362 n.2 (2d Cir. 1993).
[5] As Defendants acknowledged at oral argument, a hypothetical situation could arise where there is a

*See id.* Indeed, when Cognizant first halted payment of the Bohrer Firm's fees in 2019 on the basis that the bills were unreasonable, it was *Schwartz* who filed an action in the Delaware Court of Chancery to compel Cognizant to continue advancing the Bohrer Firm's fees to him. Compl. ¶ 39. And when Cognizant filed the instant complaint in this Court, Schwartz again filed a motion in the Court of Chancery to prevent Cognizant from prosecuting this case on the basis that it violated that court's prior ruling on advancement. Because the interests of Schwartz—the signatory to the agreement—and Defendants are not only closely related, but also completely aligned, it should have been foreseeable to Cognizant that Defendants would seek to enforce the forum selection clause contained in the Indemnification Agreement.

Furthermore, portions of Cognizant's complaint allege that Defendants and Schwartz at times acted in concert with one another and as one unit during the Advancement Proceeding to perpetuate a "fraud on the [Delaware] Court." Compl. at 14; *see id.* ¶ 58 ("While Bohrer did not enter an appearance in the litigation [between Schwartz and Cognizant], he played a direct, active role in the case . . . Bohrer PLLC and Bohrer were intimately involved in the filings made on Schwartz's behalf, including drafting significant portions of the filings."); *id.* ¶ 59 ("Throughout the course of the Advancement Proceeding, Bohrer and Bohrer PLLC were not candid with the court about their conduct. Rather, they caused Schwartz and his counsel to repeatedly and falsely claim . . . that the Bohrer PLLC's invoices were 'detailed' and allowed Cognizant 'to see what's going on' with regard to the work the firm was doing on Schwartz's behalf; and . . . that the purported fees requested by Bohrer were 'demonstratively reasonable.'");

---

divergence of interest between the indemnitee and his counsel—for example, were the indemnitee to accuse his lawyers of fraudulent billing—such that the non-signatory's interest is no longer "derivative of" the signatory's. This, however, is not that case.

10

*id.* ¶ 40 (alleging that the Bohrer Firm "pays all of Steve Schwartz['s] personal expenses"). These allegations further underscore the closeness of the relationship between Defendants and Schwartz. *See Horvath*, 461 F. App'x at 64 (allowing a non-signatory to enforce a forum selection clause where it was alleged to have "aided and abetted [the signatory's] breach of fiduciary duty by acting in concert with it to negligently misrepresent the nature and risks associated with certain securities that [the signatory] marketed and sold to [the plaintiff]").

Cognizant cites several cases in its brief in which courts have declined to enforce forum selection clauses against non-signatories on the basis that they were not so "closely related" to the dispute that they could foresee being bound. *See, e.g.*, *Leviton Mfg. Co. v. Reeve*, 942 F. Supp. 2d 244, 258-59 (E.D.N.Y. 2013), *amended* (Mar. 23, 2013); *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 351 (S.D.N.Y. 2020). But here, the resisting party—Cognizant—was a signatory to the agreement. *Cf. NuMSP*, 462 F. Supp. 3d at 351 (holding that it was not "reasonably foreseeable" to non-signatories that they would be bound by a forum selection clause where all of them denied awareness of the contract in general, let alone its forum selection clause in particular). It thus could have foreseen that an agreement whose predominant purpose was to guarantee an employee's "unfettered access to defense counsel," May 10, 2022 Oral Arg. Tr. at 11, could be later enforced by that employee's defense counsel.[6] That Cognizant elected to sue only Defendants here, but not Schwartz, "does not permit [it] to escape its contractual

---

[6] Cognizant also cites *Leviton* for the proposition that while an attorney-client relationship is "certainly a business relationship . . . it is not the type of close business relationship that other courts have found imperative." 942 F. Supp. 2d at 259. *Leviton* is inapposite for present purposes. The court there held that it would be "simply too attenuated" to bind a signatory's outside counsel to a forum selection clause "contained in an agreement for a transaction in which that counsel provided some sort of due diligence or opinion." *Id.* By contrast, the agreement in question here is not about an unrelated transaction on which counsel merely advised; rather, counsel's fees are at the very heart of the agreement and the parties' dispute in this case.

11

obligations." *Citi Structure Const. v. Zurich Am. Ins. Co.*, No. 14-CV-5371 (RA), 2015 WL 4934414, at *3 (S.D.N.Y. Aug. 18, 2015); *see also Midamines SPRL Ltd. v. KBC Bank NV*, No. 12-CV-8089 (RJS), 2014 WL 1116875, at *6 (S.D.N.Y. Mar. 8, 2014), *aff'd*, 601 F. App'x 43 (2d Cir. 2015) (enforcing the forum selection clause and noting the Second Circuit's instruction that "parties should not be permitted to use 'evasive, formalistic means lacking economic substance to escape contractual obligations'").

### B. The Claims Are Subject to the Forum Selection Clause

Plaintiff brings claims against Defendants for fraud, civil conspiracy, and unjust enrichment. Cognizant argues that such claims, which sound in tort, are not within the scope of the forum selection clause as they do not "arise out of or in connection with" the Indemnification Agreement. Rather, it contends that these are "distinct common law claims that do not implicate Schwartz's contractual advancement rights." Pl.'s Opp. at 2.

"Where broadly worded, 'a forum selection clause is not limited solely to claims for breach of the contract that contains it.'" *KTV Media Intern., Inc. v. Galaxy Group, LA LLC*, 812 F. Supp. 2d 377, 385 (S.D.N.Y. 2011) (quoting *Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 329 (S.D.N.Y. 2008)); *see also Lurie v. Norwegian Cruise Lines, Ltd.*, 305 F. Supp. 2d 352, 363 (S.D.N.Y. 2004) ("It is well settled that forum selection clauses may encompass claims beyond breach of the contract containing the clause, including tort claims."). Indeed, "the Second Circuit has endorsed an expansive reading of the scope of forum selection clauses, in keeping with the policy favoring their use." *Bluefire Wireless, Inc. v. Cloud9 Mobile Communications, Ltd.*, No. 09-CV-7268, 2009 WL 4907060, at *3 (S.D.N.Y. Dec. 21, 2009); *see also Roby*, 996 F.2d at 1361. "The scope of a forum selection clause depends on the language of the clause itself." *Lurie*, 305 F. Supp. 2d at 363. In conducting this analysis, "it is inappropriate

. . . to depend solely on the legal labels used by plaintiff to decide if his case arises out of the contract." *Phillips*, 494 F.3d at 388. Instead, "when ascertaining the applicability of a contractual provision to particular claims, we examine the substance of those claims, shorn of their labels." *Id.* Courts must consider whether the non-contract claims "ultimately depend on the existence of a contractual relationship between the parties, or if resolution of the claims relates to interpretation of the contract, or if the tort claims involve the same operative facts as a parallel claim for breach of contract." *Direct Mail Prod. Servs., Ltd. v. MBNA Corp.*, No. 99-CV-10550, 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000). "A forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if the gist of those claims is a breach of that relationship." *Anselmo v. Univision Station Group, Inc.*, No. 92-CV-1471(RLC), 1993 WL 17173, at *2 (S.D.N.Y. Jan. 15, 1993); *see also Roby*, 996 F.2d at 1360 ("We refuse to allow a party's solemn promise to be defeated by artful pleading.").

This lawsuit is plainly "an action or proceeding arising out of or in connection with" the Indemnification Agreement. To "arise out of" means "to originate from a specified source, and generally indicates a causal connection." *Phillips*, 494 F.3d at 389. By contrast, courts have consistently held that the phrase "in connection with" signals a broader application of the clause. *Prod. Res. Grp., L.L.C. v. Martin Prof'l, A/S*, 907 F. Supp. 2d 401, 412 (S.D.N.Y. 2012) (noting that terms such as "in connection with," "relating to," or "associated with" indicate a broader scope for forum selection clauses than do the terms "arise out of" or "arising under"); *Phillips*, 494 F.3d at 389 ("We do not understand the words 'arise out of' as encompassing all claims that have some possible relationship with the contract, including claims that may only 'relate to,' be 'associated with,' or 'arise in connection with' the contract."); *Coregis Ins. Co. v. Am. Health*

13

*Found., Inc.*, 241 F.3d 123, 128-29 (2d Cir. 2001) ("Courts have similarly described the term 'relating to' as equivalent to the phrases 'in connection with' and 'associated with' . . . and have held such phrases to be broader in scope than the term 'arising out of.'"); *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, No. 07-CV-9580 (HB), 2008 WL 4833001, at *7 (S.D.N.Y. Nov. 5, 2008) (noting that the phrase "connected with" is broader than "arise out of").

The fraud claims Cognizant has brought against Defendants bear a strong connection to the underlying contractual relationship between Cognizant and Schwartz. First, the fact that the allegations contained in Cognizant's complaint "are littered with references to . . . the Agreement," *F5 Cap*, 2015 WL 5797019, at *7, suggests that there is a relationship between Cognizant's claims here and the Indemnification Agreement. *See Diesel*, 2008 WL 4833001, at *7 ("The phrase 'in connection with' . . . mean[s] 'connected by reason of an established or discoverable relation.'"). Indeed, the Indemnification Agreement is attached as Exhibit A to Cognizant's complaint. And the complaint even frames the dispute as one arising from Defendants' alleged abuse of Cognizant's contractual obligation to indemnify. *See* Compl. ¶ 13 ("Even though Cognizant was contractually required to advance fees and costs for Schwartz's defense, Bohrer and Bohrer PLLC took advantage of that obligation in the extreme."). Second, but for the Indemnification Agreement, which gave rise to Cognizant's obligation to advance to Schwartz his attorneys' fees, there would be no relationship between Cognizant and Defendants. *See Young Women's Christian Ass'n of U.S., Nat. Bd. v. HMC Entertainment, Inc.*, No. 91-CV-7943, 1992 WL 279361, at *4 (S.D.N.Y. Sept. 25, 1992) (applying forum selection clause to non-contract claims where "plaintiff's entire business relation with defendant . . . stemmed from the contract"). Third, as Cognizant's counsel acknowledged at oral argument, an inquiry into whether the Bohrer Firm's bills are fraudulent will be part of the assessment as to whether their

fees are reasonable under the Indemnification Agreement. *See* May 10, 2022 Oral Arg. Tr. at 27 ("The Court: But in assessing the reasonableness of the fees, won't fraud be a part of that, whether fees were properly billed or not? Mr. Nikas: That will be a question, yes."). Cognizant's fraud claims thus "relate[] to interpretation of the [Indemnification Agreement]." *See Direct Mail*, 2000 WL 1277597, at *6. Moreover, the fraud issue involves "the same operative facts as [the] parallel claim for breach of contract," *id.*, as evidenced by Cognizant's assertion that the Bohrer Firm's bills were characterized by "substantial indicia . . . [of] fraudulent billing," Feb. 19, 2020 Oral Arg. Tr. at 88, in support of its unclean hands defense in the parallel Advancement Proceeding.

Accordingly, the Court finds that Cognizant's claims fall within the broad language of the forum selection clause.

### C. The Forum Selection Clause Is Enforceable

As the first three prongs of the forum selection analysis are satisfied, the forum selection clause in the Indemnification Agreement is presumptively enforceable. *Martinez*, 740 F.3d at 217 (citing *Phillips*, 494 F.3d at 383). Cognizant may therefore defeat dismissal only if it overcomes this presumption, namely, by establishing that enforcing the forum selection clause "would be unreasonable or unjust." *Id.* (citing *Phillips*, 494 F.3d at 384). A forum selection clause is enforceable unless "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Phillips*, 494 F.3d at 392 (citing *Roby*, 996 F.2d at 1363). Cognizant has not argued that the forum selection clause should be set aside because its enforcement would be unreasonable or unjust, nor does the

15

Court find any basis to so conclude. The clause is thus enforceable and the proper forum for this dispute is the Delaware Court of Chancery.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 21 and to close this case.

SO ORDERED.

Dated:   May 27, 2022
         New York, New York

_____
Ronnie Abrams
United States District Judge